IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ROBERT L. REESE                                                                PLAINTIFF

V.                                                         CIVIL ACTION NO. 4:04CV358-SAA

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Robert L. Reese for disability benefits and supplemental security income payments under Title II and Title XVI, respectively, of the Social Security Act. In accordance with the provisions of 28 U.S.C. § 636(c) both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

### I. FACTUAL AND PROCEDURAL HISTORY

The plaintiff was born on May 9, 1960 and was forty-four years old at the time of the hearing on June 16, 2004. He completed the eighth grade in school. The plaintiff's past relevant work has been as a truck driver, drywall laborer and a forklift operator. He filed his application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on June 14, 2001. Specifically the plaintiff alleged a disability onset date of June 15, 1999, due to hypertension, back pain depression and anger. (Tr. 14, 81). The Social Security Administration denied plaintiff's application initially and on reconsideration. Following a

1

hearing, on Autust 30, 2004, the Administrative Law Judge ("ALJ") issued his decision finding that the plaintiff was not disabled. On October 1, 2004, the Appeals Council denied the plaintiff's request for review. Thereafter, the plaintiff filed the present action with this court. The ALJ's final hearing decision is now ripe for review.

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (1998).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (1998).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (1998).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (1998). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (1998).

burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity [RFC], age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The ALJ found that the plaintiff suffered from impairments, including back pain with a history of back surgery with radiculopathy, multiple fractures in his elbow, wrist and toe, depression, a personality disorder and borderline intellectual functioning, but that these impairments did not, either singly or in combination, meet or equal one of the impairments found in the listings in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20, Finding Nos. 3 & 4) Finally, the ALJ determined that the plaintiff was not under a disability as defined by the Social Security Act. On appeal, the Appeals Council considered all the evidence before it but found that there was no basis for changing the ALJ's decision.

On appeal to this court the plaintiff makes the following arguments:

> (A) The Administrative Law Judge did not fairly and fully develop the record concerning Plaintiff's physical (medical), psychological and mental impairments or the combination thereof, . . . his self-inflicted wound to his right hand secondary to pain . . . his depression and his borderline mental functioning.
> (B) The ALJ's decision is based on an erroneous standard of law, in that he did not perform an adequate individualized functional assessment of [plaintiff's] physical condition, psychological condition and mental impairment. . . .

Plaintiff's Brief, pp. 1-2.

## II. STANDARD OF REVIEW

---

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (1998).

[8] *Muse*, 925 F.2d at 789.

3

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further stated that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, in Social Security disability review cases, where § 405(g) governs the standard of review, *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir.1964), the Fifth Circuit has held that appellate review is limited to two issues: (1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2001) *citing Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir.1994); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992). This court may not overturn the Secretary's decision if it is supported by substantial evidence–"more than a mere scintilla" -- and correctly applies the law. *Morris* at 745; *Anthony*, 954 F.2d at 292.

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the

other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## III. DISCUSSION

### A. ALJ's Development of the Record in Light of Plaintiff's Numerous Mental and Physical Conditions

The plaintiff's first argument is that the ALJ did not fully develop the record. Specifically, the plaintiff argues that the ALJ should have further developed the record by requiring additional examination and testing by a "psychiatrist and/or neurosurgeon and/or an orthopedic surgeon and/or a pain management specialist in order to determine whether [plaintiff's] medical, mental and psychological conditions or the combination thereof met the criteria of either 20 C.F.R. Chap III, Pt. 404, Subpt. P. App. 1." Plaintiff's Brief, p. 19. The plaintiff attaches a copy of *King v. Commissioner,* Northern District of Mississippi Civil Action No. 4:93cv106-D-O, an unpublished Report and Recommendation in which Magistrate Judge Orlansky recommended a factually similar case be remanded to the ALJ for further development of the record. In that case, the plaintiff was on the borderline of being a younger individual but was closely approaching advanced age (she was 49 at the time of the hearing). The psychologist, Dr. McVaugh, failed to give the plaintiff an IQ test because her "cooperation level was not very

5

good and she behaved in a rather passive and avoidant manner," but nevertheless stated his opinion that she would have scored in the mildly mentally retarded range. *King v. Commissioner* at p. 6. Judge Orlansky held that an ALJ has a duty to further evaluate the plaintiff when, as in that case, circumstances presented such a close call, *i.e.,* the plaintiff was on the borderline of an age category or mental category as to which Appendix 1 might dictate a finding one way or another if the plaintiff's I.Q. were determined with certainty. In the *King* case Judge Orlansky found that because determination of plaintiff's IQ via testing could have been determinative of whether she was disabled under the Social Security Act; specifically under 20 C.F.R.§ 404, Subpt. P, App. 1, § 12.05 regarding mental retardation, the case should be remanded for such testing in order to better determine the plaintiff's disability or lack thereof.

While the *King* case and the instant case have factual similarities in that both cases involve a plaintiff on the borderline of an age category and in both cases the psychologist, Dr. McVaugh, decided not to administer an actual I.Q. test, there exists one distinguishing factor in the instant case that puts this case outside the circumstance Judge Orlansky addressed – in the instant case there is proof to support a finding that administering an I.Q. test to the plaintiff would not reveal any reliable information because the plaintiff would not have given honest answers and thus would not have provided dependable information on which a psychologist or ALJ could base an opinion. Both psychologists who examined the plaintiff in this case stated that plaintiff was not cooperative in their evaluations and that they had reason to believe that he was not candid in the information provided or the mental attitude portrayed. *See* Tr. 172, 179. Further, review of the record in this case reveals several inconsistencies noted by other individuals; for example, in the Disability Report from the Social Security Administration

6

completed on June 14, 2001, it is noted that plaintiff "walked with a noticeable limp" and was "assisted by [a] cane;" however, a limp was not observed by any other individuals throughout the record or by the ALJ at the hearing. Tr. 77.[9] Finally, in this case Dr. Whelan did perform I.Q. testing and found that the plaintiff was not completely honest in his answers; Dr. Whelan thus estimated that plaintiff's actual I.Q. was twenty or more points higher than the test revealed. Tr. 179. Therefore, the court finds that the case at bar is distinguishable from the *King* case and that Judge Orlansky's rationale would not dictate the same result.

In his decision the ALJ considered the medical evidence fully. Tr. 16-18. He detailed the reports of both psychologists and the consultative physician, Dr. Adams, and found that plaintiff suffers from impairments, including back pain with a history of back surgery with radiculopathy, multiple fractures in his elbow, wrist and toe, depression, a personality disorder and borderline intellectual functioning. The ALJ concluded, however, that plaintiff's impairments, either singly or in combination, would not meet or equal any of the impairments found in the listings in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20, Finding Nos. 3 & 4) In reaching this conclusion, the ALJ fully considered the evidence in the record, discussed the plaintiff's medical history, acknowledged his numerous physical and mental disabilities, discussed plaintiff's credibility and found that the plaintiff was not fully credible.

The record in this cause leaves no doubt that the plaintiff suffers from physical pain and discomfort as well as marked mental disabilities; however, he is not entitled to benefits unless he

---

[9] The court notes that there are several portions of the transcript in which answers by the plaintiff are "inaudible." However, neither party has raised this issue nor did the undersigned find that the "inaudible" responses and lack of information garnered therefrom adversely affected the evidence in this case as it relates to the issues on appeal.

is "disabled" as that term is defined by the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A). *Jones v. Heckler*, 702 F.2d 616 (5th Cir.1983); *See also Heckler v. Campbell*, 461 U.S. 458, 459-61, 103 S.Ct. 1952, 1953-54, 76 L.Ed.2d 66 (1983). The term "disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(I)(1), 423(d)(1)(A). The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. 42 U.S.C. §§ 423(d)(3), (d)(5); *Jones v. Heckler*, 702 F.2d at 620.

The ALJ gave careful attention to the medical evidence in the record, and made findings that the medical evidence did not support the plaintiff's subjective complaints and that the plaintiff was not fully candid in his responses to physicians. It is not clear that remand of this case for further development of the record would be helpful because it may reasonably be assumed that the information provided by the plaintiff during evaluation is not necessarily helpful in determining valid, reliable evidence. Reviewing the record as a whole, the court finds that the ALJ did not fail to meet his duty to develop the record in this case. The court finds that based on the record as a whole the decision of the ALJ was fully considered and was proper.

B. The ALJ's Decision is Based on an Erroneous Standard of Law

The plaintiff also argues that the ALJ erred as a matter of law in failing to find that the plaintiff's impairments did not meet or equal one of the listings under the Act. The plaintiff contends that the ALJ's analysis in determining whether the plaintiff was able to perform gainful employment and whether his condition was indeed disabling was so inadequate that it amounted

8

to mechanical application of the Medical-Vocational Guidelines in violation of 20 C. F. R. §404.1563 (a)-(d) and thus was improper as a matter of law. Nevertheless, it is clear from the ALJ's decision that the ALJ did not rely solely on the application of the medical vocational guidelines. As stated in Finding No. 12, the ALJ used the guidelines as a "framework for decision-making" and determined that there were jobs in significant numbers in the national economy that the plaintiff could perform. Tr. 21. At the Hearing, the ALJ also relied on the testimony of a Vocational Expert (hereinafter "VE") to determine that there existed a significant number of jobs the plaintiff could perform given his impairments, limitations, and RFC. *See. Fraga v. Bowen* 810 F.2d 1296, 1301 (5th Cir. 1987). The ALJ properly considered all of the evidence and applied the guidelines in conjunction with the testimony of the VE to arrive at his determination that the plaintiff was not disabled under the act.

Finally, the plaintiff argues that the ALJ improperly determined that the plaintiff was able to perform a modified range of medium work because the medical evidence and the plaintiff's complaints clearly prohibit such a finding. The government responds that the ALJ properly considered all evidence before him and that his finding regarding the plaintiff's RFC was proper in light of the evidence and his finding that the plaintiff's subjective complaints were not entirely credible.

It is peculiarly within the province of the ALJ to make determinations regarding credibility of the evidence. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). Where medical evidence provides a basis for a plaintiff's complaints, as in this case, an ALJ's finding that the complaints are incredible will not be upheld by a reviewing court unless the ALJ weighed the medical evidence and articulated his reasons for disbelieving the complaints. *Abshire v. Bowen*,

9

848 F.2d 638, 642 (5th Cir. 1988). Moreover, where a claimant would have prevailed had his testimony been regarded as credible, the ALJ must have indicated his credibility choices and the bases for those choices in order to be upheld. *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981). The fact that the ALJ did not find that the plaintiff had the severe level of pain that he claimed is completely within the discretion of the ALJ.

After review of the record in this case the court finds that the ALJ was not in error in his finding that the plaintiff was not entirely credible. In fact, the record is so riddled with plaintiff's inconsistencies, most but not all of which were cited in the Commissioner's brief at pages 13-14, that there is no other finding that would be proper but that the plaintiff was not entirely credible. Further, the ALJ's application of the medical-vocational guidelines in conjunction with the testimony of the VE and the applicable medical evidence in the case is more than substantial evidence upon which the ALJ could have based his findings. Accordingly, the court finds that the ALJ's decision that the plaintiff was not disabled and was not entitled to disability insurance benefits or eligible for supplemental security income under the Act was not clearly erroneous.

## IV. CONCLUSION

A final judgment shall issue this day in accordance with this memorandum opinion.

THIS, the 21st day of February, 2006.

    /s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE